Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

*November 09, 2021*

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| **UNITED STATES OF AMERICA** | § |
| | § |
| **v.** | § **Criminal No. 21-CR-502** |
| | § **UNDER SEAL** |
| **CHRISTOPHER OBAZE and** | § |
| **ERIC TUBBE,** | § |
| | § |
| **Defendants.** | § |

## FIRST AMENDED INDICTMENT

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise specified:

1.      The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA made it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance or conspire to do so.

2.      The CSA and its implementing regulations set forth which drugs and other substances are defined by law as "controlled substances," and assigned those controlled substances to one of five schedules (Schedule I, II, III, IV, or V) depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3.      A controlled substance assigned to "Schedule II" meant that the drug had a high potential for abuse and a currently accepted medical use in treatment in the United States, or the drug had a currently accepted medical use with severe restrictions.

4.      Pursuant to the CSA and its implementing regulations:

a.      Oxycodone was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b)(1)(xiii). Oxycodone was used to treat severe pain and, as with other opioids, was highly addictive. Oxycodone HCL 30mg ("oxycodone 30mg") tablets had substantial street value and were in high demand on Houston's illicit drug market.

b.      Hydrocodone was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b)(1)(vi). Hydrocodone was used to treat severe pain. Hydrocodone, as with other opioids, was highly addictive. Tablets combining 10mg of hydrocodone bitartrate and 325mg of acetaminophen ("hydrocodone 10-325mg") had substantial street value and were in high demand on Houston's illicit drug market.

5.      With exceptions not applicable here, appropriately licensed and registered pharmacies could dispense controlled substances only pursuant to legitimate prescriptions. *See* 21 C.F.R. § 1306.04.

6.      Chapter 21 of the Code of Federal Regulations, Section 1306.06 governed the filling of prescriptions and provided, "A prescription for a controlled substance may only be filled by a pharmacist, acting in the usual course of his professional practice and either registered individually or employed in a registered pharmacy, a registered central fill pharmacy, or registered institutional practitioner."

## RELEVANT INDIVIDUALS AND ENTITIES

7.      Defendant **CHRISTOPHER OBAZE** was the owner and pharmacist-in-charge ("PIC") at Chrisco Pharmacy.

8.      Defendant **ERIC TUBBE** was the pharmacy technician at Chrisco Pharmacy.

9.      Chrisco Pharmacy, Inc. ("CHRISCO") was located at 9623 Southwest Freeway, Houston Texas 77074. CHRISCO operated as an illegal "ghosting pharmacy," a term used for a

2

pharmacy that purchases large quantities of oxycodone, hydrocodone, and other commonly diverted controlled substances to dispense, in bulk, without prescriptions, onto the black market.

10.     **PERSONS A** and **B** were pharmaceutical drug traffickers that illegally bought bulk quantities of oxycodone, hydrocodone, and other controlled substances from **CHRISTOPHER OBAZE** and **ERIC TUBBE**.

11.     **PERSON C** was one of **CHRISTOPHER OBAZE** and **ERIC TUBBE**'s financial co-conspirators.

12.     PERSON D was an individual who co-owned bank accounts with **ERIC TUBBE**.

13.     DISTRIBUTORS A and B were distributors of controlled substances.

**COUNT ONE**
**Conspiracy to Unlawfully Distribute and Dispense Controlled Substances**
**(21 U.S.C. § 846)**

14.     Paragraphs 1 through 13 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

15.     From in or around January 2018, and continuing through in or around October 2021, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**CHRISTOPHER OBAZE** and **ERIC TUBBE**

knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, and with **PERSON A**, **PERSON B**, and others known and unknown to the Grand Jury, to violate Title 21, United States Code, Section 841(a)(1), that is, to knowingly, intentionally, and unlawfully distribute and dispense, mixtures and substances containing a detectable amount of

3

controlled substances, including hydrocodone and oxycodone, both Schedule II controlled substances, and other controlled substances, not with a legitimate medical purpose and outside the scope of professional practice.

## Purpose of the Conspiracy

16.     It was the purpose of the conspiracy for **CHRISTOPHER OBAZE**, **ERIC TUBBE**, **PERSON A**, **PERSON B**, and their co-conspirators to unlawfully enrich themselves by, among other things: (a) trafficking in controlled substances, including oxycodone and hydrocodone, that **CHRISTOPHER OBAZE** and **ERIC TUBBE** distributed and dispensed without a legitimate medical purpose and outside the scope of professional practice; (b) generating large profits from trafficking in controlled substances; and (c) diverting the proceeds from those controlled substance sales for the personal use and benefit of **CHRISTOPHER OBAZE**, **ERIC TUBBE**, **PERSON A**, **PERSON B**, and their coconspirators.

## Manner and Means of the Conspiracy

The manner and means by which **CHRISTOPHER OBAZE**, **ERIC TUBBE**, **PERSON A**, **PERSON B**, and their coconspirators sought to accomplish the purpose and object of the conspiracy included, among other things:

17.     **CHRISTOPHER OBAZE** maintained a Texas Pharmacy License from the Texas State Board of Pharmacy ("TSBP") and a DEA Registration for CHRISCO. **CHRISTOPHER OBAZE** also maintained a license to practice pharmacy so that he could hold himself out to TSBP and other oversight authorities as CHRISCO's PIC.

4

18.     **ERIC TUBBE** maintained credentials as a pharmacy technician so that he could hold himself out to TSBP and others as CHRISCO's pharmacy technician. **ERIC TUBBE** managed and oversaw the operations of CHRISCO in **CHRISTOPHER OBAZE**'s absence, even though no pharmacist was present at CHRISCO during those times.

19.     Under the guise of operating CHRISCO as a legitimate pharmacy, **CHRISTOPHER OBAZE** and **ERIC TUBBE** purchased controlled substances from DISTRIBUTOR A, DISTRIBUTOR B, and other distributors that **CHRISTOPHER OBAZE** and **ERIC TUBBE** knew and intended would be illegally distributed and dispensed, initially to **PERSON A**, **PERSON B**, and other drug traffickers, and ultimately onto the street.

20.     **ERIC TUBBE** sometimes used his own personal funds to purchase controlled substances from DISTRIBUTOR A, DISTRIBUTOR B, and other distributors that **CHRISTOPHER OBAZE** and **ERIC TUBBE** knew and intended would be illegally distributed and dispensed, initially to **PERSON A**, **PERSON B**, and other drug traffickers, and ultimately onto the street.

21.     Pharmaceutical drug traffickers, including **PERSON A** and **PERSON B**, bought in bulk hydrocodone, oxycodone, and other controlled substances that **CHRISTOPHER OBAZE** and **ERIC TUBBE** purchased from DISTRIBUTOR A, DISTRIBUTOR B, and other distributors, without presenting legitimate prescriptions authorized by a physician. **PERSON A**, **PERSON B**, and other pharmaceutical drug traffickers paid cash to **CHRISTOPHER OBAZE** and **ERIC TUBBE** to obtain the drugs without any legitimate prescription or medical purpose.

22.     Starting in around July 2018, **CHRISTOPHER OBAZE** and **ERIC TUBBE** caused CHRISCO to cease reporting to TSBP's prescription monitoring program ("PMP")

database, into which pharmacist are required by law to submit prescription information including the patient's name and physician, within 24 hours of dispensing any controlled substance.

23.     **CHRISTOPHER OBAZE** and **ERIC TUBBE** maintained the physical premises at CHRISCO not to for the purpose of conducting pharmacy business, but only as a front to illegally distribute and dispense controlled substances, in bulk, to their co-conspirators, including **PERSON A** and **PERSON B**, while avoiding detection by law enforcement.

24.     CHRISCO had virtually no foot traffic into or out of the pharmacy, had few if any real patients, and filled few if any actual prescriptions. Data reported to DEA by DISTRIBUTOR A, DISTRIBUTOR B, and other distributors reflects that, from in or around January 2018 through in or around October 2021, **CHRISTOPHER OBAZE** and **ERIC TUBBE**, through CHRISCO, purchased at least approximately 2,268,700 combined tablets of hydrocodone 10-325mg and oxycodone 30mg, which were illegally distributed and dispensed to their co-conspirators, including **PERSON A** and **PERSON B**.

25.     In or around November 2018, the International Bank of Commerce ("IBC") sought to and did close certain CHRISCO accounts due to suspicious cash transactions that appeared designed to avoid the bank's reporting threshold. After the accounts were closed, **CHRISTOPHER OBAZE** called the bank and insisted the cash transactions were related to legitimate pharmacy operations. **CHRISTOPHER OBAZE** then submitted and caused to be submitted false documents to IBC, representing that CHRISCO dispensed specific prescriptions, written by specific doctors, to specific patients, when in fact, **CHRISTOPHER OBAZE** knew that the prescriptions represented in the documents were invalid and that the medications represented had not been dispensed to the purported patients listed. **CHRISTOPHER OBAZE**

caused these false documents to be submitted to IBC for the purpose of maintaining bank accounts into which ill-gotten gains from the conspiracy could be deposited.

26.     **CHRISTOPHER OBAZE** and **ERIC TUBBE** split the proceeds from distributing and dispensing, through CHRISCO, controlled substances, including hydrocodone and oxycodone, without a legitimate medical purpose and outside the scope of professional practice.

All in violation of Title 21, United States Code, Sections 846 & 841(b)(1)(C).

## COUNT TWO
## Maintaining a Drug-Involved Premises in Proximity to a Facility for Children
### (21 U.S.C. §§ 856(a)(1) and 860, and 18 U.S.C. § 2)

27.     Paragraphs 1 through 13 and 16 through 26 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

28.     From in or around January 2018, and continuing through in or around October 2021, in the Southern District of Texas, and elsewhere, Defendants

**CHRISTOPHER OBAZE and ERIC TUBBE,**

aiding and abetting and aided and abetted by others known and unknown to the Grand Jury, did knowingly and intentionally use and maintain a place known as Chrisco Pharmacy, Inc., located at 9623 Southwest Freeway, Houston Texas 77074, permanently and temporarily, for the purpose of distributing Schedule II controlled substances, including oxycodone and hydrocodone, outside the usual course of professional practice and without a legitimate medical purpose, in violation of Title 21, United States Code, Section 856(a)(1), within 1,000 feet of the real property comprising Atlas Childcare, a private elementary school and playground, and within 100 feet of the portion of the Atlas Childcare property comprising a private youth center.

In violation of Title 21, United States Code, Sections 856(a)(1) and 860, and Title 18, United States Code, Section 2.

## COUNT THREE
### Conspiracy to Launder Monetary Instruments
### (18 U.S.C. § 1956(h) – Money Laundering Promotion; Concealment)

29.     Paragraphs 1 through 13 and 16 through 26 of this Indictment are re-alleged and

incorporated by reference as though fully set forth herein.

30.     From in or around January 2018, and continuing through in or around October

2021, in the Southern District of Texas, and elsewhere, Defendants

**CHRISTOPHER OBAZE** and **ERIC TUBBE**

did knowingly combine, conspire, and agree with each other, **PERSON C**, and other persons

known and unknown to the Grand Jury, to commit offenses against the United States in violation

of Title 18, United States Code, Section 1956, to wit:

(a) to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Conspiracy to Distribute Controlled Substances and Maintaining a Drug-Involved Premises, with the intent to promote the carrying on of a specified unlawful activity, that is Conspiracy to Distribute Controlled Substances, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(b) to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Conspiracy to Distribute Controlled Substances and Maintaining a Drug-Involved Premises, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## Manner and Means of the Conspiracy

The manner and means by which **CHRISTOPHER OBAZE**, **ERIC TUBBE**, **PERSON C**, and their co-conspirators sought to accomplish the purpose and object of the conspiracy included, among other things:

*Promotion of the Conspiracy*

31.     **CHRISTOPHER OBAZE**, **ERIC TUBBE**, and **PERSON C** used proceeds from the unlawful distribution and dispensing of controlled substances to fund the following accounts, which funds were used to purchase additional controlled substances from DISTRIBUTOR A, DISTRIBUTOR B, and others:

| Accounts Used to Purchase from Distributors | | |
|---|---|---|
| **Account Owner** | **Bank** | **Account Number** |
| CHRISCO | International Bank of Commerce | x1088 |
| CHRISCO | Comerica | x3460 |
| **ERIC TUBBE** and PERSON D | Bank of America | x9933 |
| **ERIC TUBBE** and PERSON D | Bank of America | x7569 |

32.     From on or about July 1, 2020, through on or about March 8, 2021, the CHRISCO IBC Account x1088 had approximately $864,869.00 in credits, of which over $850,000 were cash deposits. The same account reflected approximately $847,309.57 in debits during the same timeframe.

33.     In this timeframe, **CHRISTOPHER OBAZE** wrote checks and used his debit card to make payments from CHRISCO IBC Account x1088 to DISTRIBUTOR A (approximately $294,314.78) and DISTRIBUTOR B (approximately $154,917.58), for the purpose of obtaining oxycodone, hydrocodone, and other controlled substances.

34.     On multiple occasions, **CHRISTOPHER OBAZE** used CHRISCO IBC Account x1088 to purchase hydrocodone, oxycodone, and other controlled substances from DISTRIBUTOR A and DISTRIBUTOR B, which funds were proceeds from the unlawful distribution and dispensing of controlled substances that **CHRISTOPHER OBAZE** and **ERIC TUBBE** had previously purchased from DISTRIBUTOR A, DISTRIBUTOR B, and others.

35.     Similarly, during approximately the same timeframe, the CHRISCO Comerica Account ending in x3460 ("CHRISCO Comerica Account x3460") received approximately $470,345.17 in credits—approximately $415,185.10 of which were cash deposits—and had approximately $545,157.17 in debits. The debits included checks written by **CHRISTOPHER OBAZE** to DISTRIBUTOR A and DISTRIBUTOR B for approximately $106,065.79 and $196,458.60, respectively, for the purpose of obtaining oxycodone, hydrocodone, and other controlled substances.

36.     On multiple occasions, **CHRISTOPHER OBAZE** used CHRISCO Comerica Account x3460 to purchase hydrocodone, oxycodone, and other controlled substances from DISTRIBUTOR A and DISTRIBUTOR B, which funds were proceeds from the unlawful distribution and dispensing of controlled substances that **CHRISTOPHER OBAZE** and **ERIC TUBBE** had previously purchased from DISTRIBUTOR A, DISTRIBUTOR B, and others.

37.     During approximately the same timeframe, funds from **ERIC TUBBE** and PERSON D's personal Bank of America ("BOA") accounts ending in x9933 and x7569, ("TUBBE BOA Account x9933" and "TUBBE BOA Account x7569," respectively) were on occasion used to purchase controlled substances from DISTRIBUTOR A and DISTRIBUTOR B, which funds were in significant part proceeds from the unlawful distribution and dispensing of controlled

substances that **CHRISTOPHER OBAZE** and **ERIC TUBBE** had previously purchased from DISTRIBUTOR A, DISTRIBUTOR B, and others.

38.     For example, on or about July 20, 2020, **ERIC TUBBE** used funds from TUBBE BOA Account x9933 to purchase a BOA cashier's check for approximately $32,985.95, made payable to DISTRIBUTOR A, which funds were in significant part proceeds from the unlawful distribution and dispensing of controlled substances that **CHRISTOPHER OBAZE** and **ERIC TUBBE** had previously purchased from DISTRIBUTOR A, DISTRIBUTOR B, and others. Approximately four days later, on or about July 24, 2020, five cash ATM deposits were made into TUBBE BOA Account x7569—four for approximately $8,000.00 each, and one for approximately $986.00, for a total of approximately $32,986.00. On or about that same day, July 24, 2020, approximately the same amount—approximately $32,985.00—and another approximately $3,100.00, was transferred from TUBBE BOA Account x7569 to TUBBE BOA Account x9933.

*Concealment of the Conspiracy*

39.     From in or around January 2018 to in or around October 2021, **CHRISTOPHER OBAZE**, **ERIC TUBBE**, **PERSON C**, and their co-conspirators controlled dozens of bank accounts at more than six financial institutions that were used to "layer" proceeds from their illegal distribution and dispensing of oxycodone, hydrocodone, and other controlled substances, by transferring the proceeds from the criminal activity from bank account to bank account in order to obscure the origin of the proceeds and evade law enforcement detection.

40.     In addition, **CHRISTOPHER OBAZE**, **ERIC TUBBE**, **PERSON C**, and their co-conspirators deliberately made numerous cash deposits of proceeds from the criminal activity in increments of less than $10,000, "structuring" these deposits at different banks and/or branches,

sometimes on the exact same day, to avoid the requirement that banks report currency transactions over $10,000. The following chart depicts an example of such structuring by **ERIC TUBBE**:

| Date | Description | Type | Amount | Bank Account | Branch Location |
|------|-------------|------|--------|--------------|-----------------|
| 8/12/2020 | ATM Deposit | Cash | $10,000 | TUBBE BOA Account x7569 | Fondren North |
| 8/12/2020 | ATM Deposit | Cash | $7,500 | TUBBE BOA Account x7569 | Fondren North |
| 8/12/2020 | ATM Deposit | Cash | $1,500 | TUBBE BOA Account x7569 | Fondren North |
| 8/12/2020 | ATM Deposit | Cash | $10,000 | TUBBE BOA Account x7569 | Westwood |
| 8/12/2020 | ATM Deposit | Cash | $6,000 | TUBBE BOA Account x7569 | Westwood |
| 8/12/2020 | ATM Deposit | Cash | $5,000 | TUBBE BOA Account x7569 | Westwood |
| 8/12/2020 | ATM Deposit | Cash | $1,500 | TUBBE BOA Account x7569 | Westwood |
| 8/12/2020 | ATM Deposit | Cash | $6,740 | TUBBE BOA Account x7569 | Brazos Town Cn |
| 8/12/2020 | ATM Deposit | Cash | $3,000 | TUBBE BOA Account x7569 | Brazos Town Cn |
| 8/12/2020 | ATM Deposit | Cash | $1,700 | TUBBE BOA Account x7569 | Brazos Town Cn |
| 8/12/2020 | ATM Deposit | Cash | $1,500 | TUBBE BOA Account x7569 | Brazos Town Cn |
| 8/12/2020 | ATM Deposit | Cash | $1,500 | TUBBE BOA Account x7569 | Brazos Town Cn |
| 8/12/2020 | ATM Deposit | Cash | $1,500 | TUBBE BOA Account x7569 | Brazos Town Cn |
| 8/12/2020 | ATM Deposit | Cash | $1,500 | TUBBE BOA Account x7569 | Brazos Town Cn |
| 8/12/2020 | ATM Deposit | Cash | $760 | TUBBE BOA Account x7569 | Brazos Town Cn |
| 8/12/2020 | ATM Deposit | Cash | $142 | TUBBE BOA Account x7569 | Brazos Town Cn |
| 8/13/2020 | ATM Deposit | Cash | $2,060 | TUBBE BOA Account x7569 | Brazos Town Cn |
| Total | | | $61,902 | | |

41.    The following chart depicts an example of such structuring of just below $40,000, into four separate bank accounts, on or about May 7, 2019, in what was a coordinated effort between **CHRISTOPHER OBAZE** and **PERSON C**:

| Date | Timestamp | Depositor | Amount | Bank Account | Branch Location |
|------|-----------|-----------|--------|--------------|-----------------|
| 5/7/2019 | 10:16am | **PERSON C** | $9,900 | Wells Fargo Bank x1152 | 8750 Highway 6 |
| 5/7/2019 | 10:29am | **PERSON C** | $9,900 | Comerica x6616 | Branch 649 |
| 5/7/2019 | 11:35am | **OBAZE** | $9,900 | Capital One x6549 | First Colony |
| 5/7/2019 | 10:59am | **PERSON C** | $9,900 | 1st National x0316 | Branch 347 |
| Total | | | $39,600 | | |

42.    Co-conspirator accounts were also used to conduct currency exchanges—where smaller denominations were exchanged for larger ones—which was another method used by **CHRISTOPHER OBAZE**, **ERIC TUBBE**, and their co-conspirators, to hide drug proceeds.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS FOUR THROUGH SIX
### Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity
### (18 U.S.C. § 1957 & 18 U.S.C. § 2)

43.    Paragraphs 1 through 13, 16 through 26, and 30 through 42 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

44.    On or about the dates set forth below, in the Southern District of Texas, and elsewhere, Defendants

### CHRISTOPHER OBAZE and ERIC TUBBE,

as indicated in the table below, each aiding and abetting the other, did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, Conspiracy to Distribute Controlled Substances, in violation of Title 21 United States Code, Section 846, and Maintaining a Drug-Involved Premises, in violation of Title 21 United States Code, Section 856 and Title 18, United States Code, Section 2, as follows:

| Count | Defendant | Account Owner | Bank Account | In or Around Date | Approx. Debit | Description |
|---|---|---|---|---|---|---|
| 4 | **CHRISTOPHER OBAZE** | **CHRISTOPHER OBAZE** | Comerica x1310 | January 2019 | $349,342 | Down payment on 11402 Lago Verde Drive, Richmond, Texas 77406 |
| 5 | **CHRISTOPHER OBAZE** | CHRISCO | Bank of America x4600 | January 2018 | $30,000 | Down payment on a 2016 Range Rover |
| 6 | **ERIC TUBBE** | **ERIC TUBBE and PERSON D** | JP Morgan Chase x5158 | February 2021 | $50,000 | Transfer to Coinbase |

Each in violation of Title 18, United States Code, Sections 1957 and 2.

14

## COUNT SEVEN
### Aiding and Assisting in the Preparation and Presentation of a False and Fraudulent Tax Return, Statement, or Other Document
### (26 U.S.C. § 7206(2))

45.     Paragraphs 1 through 13, 16 through 26, and 30 through 42 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

46.     On or about the date set forth in the table below, in the Southern District of Texas, and elsewhere, Defendant **CHRISTOPHER OBAZE** willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the Internal Revenue Service ("IRS") of a Form 1120, for CHRISCO for calendar year 2018 (the "Corporate Return"). The Corporate Return was false and fraudulent as to material matters, among other ways, in that it represented that CHRISCO's gross receipts and cost of goods sold were approximately the amounts reflected in the "Per Return" column in the table below, whereas, as **CHRISTOPHER OBAZE** then and there knew, CHRISCO's gross receipts and cost of goods sold were approximately the amounts reflected in "Per Investigation" column in the table below.

| Tax Year | Name of Entity | False Material Item | Per Return | Per Investigation | Unreported/ Not Deducted |
|---|---|---|---|---|---|
| 2018 | CHRISCO | Form 1120, Line 1a, Gross Receipts or Sales | $315,000 | $1,275,285 | $960,285 |
| 2018 | CHRISCO | Form 1120, Line 2, Cost of Goods Sold | $141,830 | $570,571 | $428,741 |

47.     These false and fraudulent statements as to material matters on the Corporate Return caused a total tax loss to the IRS of approximately $105,620.

In violation of Title 26, United States Code, Section 7206(2).

**COUNT EIGHT**
**Aiding and Assisting in the Preparation and Presentation of a False and Fraudulent Tax Return, Statement, or Other Document**
**(26 U.S.C. § 7206(2))**

48.     Paragraphs 1 through 13, 16 through 26, and 30 through 42 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

49.     On or about the date set forth in the table below, in the Southern District of Texas, and elsewhere, Defendant **CHRISTOPHER OBAZE** willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the Internal Revenue Service of a Form 1040, for **CHRISTOPHER OBAZE** for calendar year 2018 (the "Personal Return"). The Personal Return was false and fraudulent as to material matters, among other ways, in that it represented that **CHRISTOPHER OBAZE**'s total income was approximately the amount reflected in the "Per Return" column in the table below, whereas, as **CHRISTOPHER OBAZE** then and there knew, **CHRISTOPHER OBAZE**'s total income was approximately the amount reflected in "Per Investigation" column in the table below.

| Tax Year | Name of Individual | False Material Item | Per Return | Per Investigation | Unreported |
|----------|--------------------|--------------------|------------|-------------------|------------|
| 2018 | **CHRISTOPHER OBAZE** | Form 1040, Line 6, Total Income | $24,000 | $318,520 | $294,520 |

50.     These false and fraudulent statements as to material matters on the Personal Return caused a total tax loss to the IRS of approximately $39,367.

All in violation of Title 26, United States Code, Section 7206(2).

## NOTICE OF CRIMINAL FORFEITURE
### (21 U.S.C. § 853)

51.     The allegations contained in Counts 1 and 2 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853.

52.     Pursuant to Title 21, United States Code, Section 853, upon conviction of an offense in violation of Title 21, United States Code, Section 846 and/or 856, the defendants, **CHRISTOPHER OBAZE** and **ERIC TUBBE**, shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses. The property to be forfeited includes, but is not limited to, the following:

BANK ACCOUNTS

a.    IBC Biz Rite Business Checking Account x1088, which was opened on August 6, 2018, under the name of CHRISCO PHARMACY, INC.

b.    IBC Commercial Savings Account x6465, which was opened on August 6, 2018, in the name of CHRISCO PHARMACY, INC.

c.    Comerica Bank Small Business Checking Account x3460, which was opened on November 17, 2017, in the name of CHRISCO PHARMACY, INC.

d.    Comerica Bank Business Savings Account x9721, which was opened on November 17, 2017, in the name of CHRISCO PHARMACY, INC.

e.    BBVA Compass Bank (BBVA) Clearchoice Free Checking Account x9755, which was opened on December 11, 2018, in the name of Christopher OBAZE.

f.    BBVA Savings Account x9771, which was opened on December 11, 2018, in the name of Christopher OBAZE.

g.    IBC Savings Account x6228, which was opened on November 28, 2018, in the name of Christopher OBAZE.

h.   IBC Free Personal Checking Account x4485, which was opened on November 28, 2018, in the name of Christopher OBAZE.

i.   Comerica Bank High Yield Money Market Account x1310, which was opened on November 11, 2017, in the name of Christopher OBAZE.

j.   Comerica Bank Platinum Circle Checking Account x1328, which was opened on November 11, 2017, in the name of Christopher OBAZE.

k.   IBC Free Checking Account x4061, which was opened on May 15, 2020, in the name of **PERSON C**.

l.   JPMorgan Chase (Chase) Joint Total Checking Account x6854, which was opened on October 26, 2020, in the names of Eric TUBBE and PERSON D.

m.   JPMorgan Chase (Chase) Joint Savings Account x5158, which was opened on October 26, 2020, in the names of Eric TUBBE and PERSON D.

REAL PROPERTY

a.   11402 Lago Verde Drive, Richmond, TX 77406, real property described as Assessor's parcel #4777-07-001-0280-901, subdivision name, Lakes of Bella Terra Sec. 7, legal description of Lakes of Bella Terra Sec 7, Block 1, Lot 28, purchased on 2-25-2019, for $1,025,000.00.

VEHICLES

a.   2016 black Land Rover Range Rover, VIN x9979

b.   2020 pearl white Lexus RX350, VIN x171999

53.   If any of the property described above, as a result of any act or omission

of the defendant[s]:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(1))

54.     The allegations contained in Counts 3 through 6 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

55.     Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1956 and/or 1957, the defendants, **CHRISTOPHER OBAZE** and **ERIC TUBBE**, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

BANK ACCOUNTS

a.     IBC Biz Rite Business Checking Account x1088, which was opened on August 6, 2018, under the name of CHRISCO PHARMACY, INC.

b.     IBC Commercial Savings Account x6465, which was opened on August 6, 2018, in the name of CHRISCO PHARMACY, INC.

c.     Comerica Bank Small Business Checking Account x3460, which was opened on November 17, 2017, in the name of CHRISCO PHARMACY, INC.

d.     Comerica Bank Business Savings Account x9721, which was opened on November 17, 2017, in the name of CHRISCO PHARMACY, INC.

e.     BBVA Compass Bank (BBVA) Clearchoice Free Checking Account x9755, which was opened on December 11, 2018, in the name of Christopher OBAZE.

f.     BBVA Savings Account x9771, which was opened on December 11, 2018, in the name of Christopher OBAZE.

g.     IBC Savings Account x6228, which was opened on November 28, 2018, in the name of Christopher OBAZE.

h.   IBC Free Personal Checking Account x4485, which was opened on November 28, 2018, in the name of Christopher OBAZE.

i.   Comerica Bank High Yield Money Market Account x1310, which was opened on November 11, 2017, in the name of Christopher OBAZE.

j.   Comerica Bank Platinum Circle Checking Account x1328, which was opened on November 11, 2017, in the name of Christopher OBAZE.

k.   IBC Free Checking Account x4061, which was opened on May 15, 2020, in the name of **PERSON C**.

l.   JPMorgan Chase (Chase) Joint Total Checking Account x6854, which was opened on October 26, 2020, in the names of Eric TUBBE and PERSON D.

m.   JPMorgan Chase (Chase) Joint Savings Account x5158, which was opened on October 26, 2020, in the names of Eric TUBBE and PERSON D.

REAL PROPERTY

a.   11402 Lago Verde Drive, Richmond, TX 77406, real property described as Assessor's parcel #4777-07-001-0280-901, subdivision name, Lakes of Bella Terra Sec. 7, legal description of Lakes of Bella Terra Sec 7, Block 1, Lot 28, purchased on 2-25-2019, for $1,025,000.00.

VEHICLES

a.   2016 black Land Rover Range Rover, VIN x9979

b.   2020 pearl white Lexus RX350, VIN x171999

56.   If any of the property described above, as a result of any act or omission

of the defendant[s]:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

JENNIFER B. LOWERY
ACTING UNITED STATES ATTORNEY

JOSEPH S. BEEMSTERBOER
ACTING CHIEF
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

DREW PENNEBAKER
TRIAL ATTORNEY
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE